IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**HLFIP HOLDING, INC.** d/b/a **SMART COMMUNICATIONS IP HOLDINGS,**

Plaintiff,

**v.**

**RUTHERFORD COUNTY, TENNESSEE;**

**MICHAEL FITZHUGH,** *in his official capacity as Rutherford County Sheriff;*

**KEITH D. LOWERY,** *in his official capacity as Chief Deputy of Rutherford County Sheriff's Office;*

**RUTHERFORD COUNTY ADULT DETENTION CENTER;** and

**CHRISTOPHER FLY,** *in his official capacity as Deputy Chief of Rutherford County Adult Detention Center;*

Defendants and Counterclaimants,

**VENDENGINE, INC.**

Intervenor.

Civil Action No.: 3:19-cv-00714

**Judge Richardson**
**Magistrate Judge Frensley**

**JURY DEMANDED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO AMEND PROTECTIVE ORDER**

Defendants Rutherford County, Tennessee; Michael Fitzhugh, in his official capacity as Rutherford County Sheriff; Keith D. Lowery, in his official capacity as Chief Deputy of Rutherford County Sheriff's Office; Rutherford County Adult Detention Center; and Christopher Fly, in his official capacity as Deputy Chief of Rutherford County Adult Detention Center ("Defendants") respectfully submit this Memorandum of Law in support of their Motion to Amend the January 21, 2020 Protective Order (Dkt. 51) in the above-captioned action.

## INTRODUCTION

This is a patent infringement action brought by Plaintiff HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings ("Plaintiff" or "Smart Communications") in an attempt to force Rutherford County Adult Detention Center (the "Center") to install and use Plaintiff's software and hardware instead of competitor VendEngine, Inc.'s ("Intervenor" or "VendEngine") software and hardware. Defendants, the government officials in charge of the Center, believe they should have the freedom to choose what software and hardware they wish to use at their facility and wish to defend that freedom through this litigation initiated by Smart Communications. The instant Motion to Amend Protective Order arises out of Plaintiff's improper and coercive attempts to curtail that freedom by making repeated settlement demands directly to officials of Rutherford County, without the consent of Defendants' counsel, potentially in violation of Model Rule of Professional Conduct 4.2, and regardless of this Court's January 30, 2020 Order. Based on the circumstances of this case and the Court's inherent discretion, Defendants respectfully request this Court to grant its Motion and enter the First Amended Protective Order (amended to reflect addition of paragraph 15) attached to the Declaration of André J. Bahou as Exhibit A.[1]

## FACTUAL SUMMARY

### A. No Means No

Before filing this lawsuit, Smart Communications' in-house lawyer wrote to Rutherford County Sheriff Mike Fitzhugh to allege patent infringement and to make a sales pitch "to explore an arrangement to provide our MailGuard Postal Mail Elimination® system" to the Rutherford County Adult Detention Center. (Ex. B, Letter from D. Gann to Sheriff Fitzhugh, June 28, 2019). Inexperienced at patent litigation, Sheriff Fitzhugh and others at the Rutherford County Adult

[1] All Exhibits cited herein are attached to the accompanying Declaration of André J. Bahou.

Detention Center felt intimidated by the patent infringement cease and desist letter. Shortly after that letter, Sheriff Fitzhugh called Smart Communications to decline the offer (*i.e*. to say "No") to install Plaintiff's MailGuard software at the Rutherford County Adult Detention Center.

Not to be deterred, Smart Communications filed this patent infringement lawsuit on August 15, 2019 (Dkt. 1) and again demanded settlement that required the Rutherford County Adult Detention Center install the Plaintiff's MailGuard software. (*See*, *e.g*., Dkt. 39 at ¶ 6, "two potential settlement options"). Outside counsel for Smart Communications again emphasized that his client wanted to install Smart Communications MailGuard software at Rutherford County Adult Detention Center. (Ex. C, email from Grier to Bahou, Oct. 7, 2019, "Smart Communications would instead fund the **installation** and provision of its patented MailGuard system at no cost to Rutherford." (emphasis added)). To be clear, United States Patent law does not give any one the right to force another person or entity to use its products. To the contrary, monopoly law from the England mother country was rejected in lieu of the U.S. constitutional right to exclude others under the Patent Law. (U.S. Constitution, Art. 1, § 8, clause 8).

On October 8, 2019, Defendants declined Smart Communications' settlement demand to require installation of Smart Communications MailGuard software. (Ex. D, email from Bahou to Grier, Oct. 8, 2019, stating "There is some internal resistance, which we can discuss via telephone.").

### B. Smart Communications Ups the Ante

Again, in addition to other conversations, Smart Communications reached back out on Thursday evening at 9:23 p.m., November 7 to demand virtually the same two options to "settle" the case. (Ex. E, email from Grier to Bahou, Nov. 7 at 9:23 p.m.; *see also* Ex. F, letter from J. Logan to County Mayor and Sheriff Fitzhugh, Nov. 7, 2019). Following up on a phone call

regarding the case management order, Counsel pressed hard that Smart Communications' executives wanted a "business to business" settlement meeting with the Sheriff and County Mayor by Monday--on Veteran's Day--a Federal Holiday.

> **RULE 408 COMMUNICATION**
>
> Hi AJ,
>
> Thanks again for working with us today on the proposed case management order.
>
> Further to our conversations over the past few days regarding settlement, attached is a letter from our client to Rutherford County's Sherriff and County Mayor requesting an in-person "business to business" settlement meeting, and providing the high-level parameters of a potential settlement framework.
>
> We kindly request that you pass both our client's meeting request and this letter on to Nick as soon as possible so that he can then provide the information to the Sheriff, the Mayor, and other county officials, hopefully in advance of next week's county commission meeting.
>
> Please let us know if you have any questions.
>
> Best regards,
> Jason
>
> **Jason Grier**
> Associate
>
> BakerHostetler

(Ex. E, email from Grier to Bahou, Nov. 7 at 9:23 PM) (emphasis added). The attached letter from Jim Logan (Ex. F) to the County Mayor and Sheriff Fitzhugh demanded a meeting on Monday--a government holiday--and before the County Commission on Tuesday evening. (*See* excerpt of Ex. F below, emphasis in original).

> Because we want to make sure our proposed MailGuard® implementation is customized to meet every need and concern the jail administration may have, first and foremost, we are requesting a sit-down with jail administrators, where we can present our MailGuard® solution and discuss implementation options. We have a great deal of flexibility for providing our MailGuard® platform, including providing it via a corrections-grade, ruggedized tablet system or via different types of kiosks. We are prepared to discuss these options in short order and **propose that we meet on Monday, November 11, or as soon as practicable thereafter.**

Now, however, the only proposal on the table was to install the Smart Communications' MailGuard software--which Defendants had already declined several times. To be sure, Plaintiff's conduct is bordering patent misuse by improperly requiring that Rutherford County Adult

Detention Center INSTALL Plaintiff's software. Smart Communications settlement demands continually pressed for installation of its software--which is neither required by law nor permitted as relief under any circumstance:

- As a gesture of goodwill to Rutherford County, its taxpayers, and to the Detention Center administration, we will provide an immediate and upfront "tech grant" in the amount of **one hundred thousand dollars ($100,000)** to be used by the Sheriff's Office and/or the County in any manner they deem appropriate.

- We will provide and install our MailGuard® platform, including all system hardware (tablets or kiosks), any required infrastructure, and any required software integration to accommodate other vendor systems, at no cost.

- We will implement our MailGuard Postal Mail Elimination® system, and have our trained professionals take over the handling of all routine postal mail at an off-site facility. This will not only relieve Detention Center personnel from the labor and burden of processing mail, it will also remove the associated risks from drugs and contraband that are introduced in the mail.

(Ex. F, letter from J. Logan to County Mayor and Sheriff Fitzhugh, Nov. 7, 2019). Rutherford County kindly declined that offer to meet on the Veteran's Holiday of Monday, November 11, 2019, and further, requested that all future settlement communications be made solely through Defendants' counsel instead of through direct contact between the parties' principals. (*See* email pasted below, from Bahou to Grier, Saturday, Nov. 9, 2019 at 7:14 p.m.):

| | |
|---|---|
| **From:** | A.J. Bahou |
| **Sent:** | Saturday, November 9, 2019 7:14 PM |
| **To:** | Grier, Jason P. |
| **Cc:** | Quicker, Katrina |
| **Subject:** | Re: Smart Communications v. Rutherford - Potential Settlement Meeting - Rule 408 |

**Rule 408 Communication**

Jason:

I have conferred with my client. Rutherford County has reviewed Smart Communications' letter but is declining your offer to meet on Monday. In addition, my client requested that all communications and settlement offers be presented to me as counsel.

Happy to continue the settlement conversation at your convenience.

All the best,
AJ

### C. Rutherford County Requested to be Placed on the Do Not Call List

In addition to that overly demanding request on Thursday evening to meet on Monday, Smart Communications asked to conduct settlement discussions **directly** with Rutherford County Officials who were sued in this lawsuit. The Rutherford County officials responded to Plaintiff and stated that Defendants "requested that all communications and settlement offers be presented to me as **counsel**." (*See above* email from Bahou to Grier, Nov. 9, 2019 at 7:14 p.m.) (emphasis added). As addressed below in the section regarding Plaintiff's January 30, 2020 letter, Smart Communications did not honor that request and are attempting to circumvent the specific legal process that it began in August 2019.

### D. This Court Denied Smart Communications' Motion to Force a Judicial Settlement Conference

Apparently unhappy that Defendants would not install Smart Communications' MailGuard software, Plaintiff moved the Court to force a judicial settlement conference on December 20, 2019. (Dkt. 39). The Court denied that motion on January 30, 2020. (Dkt. 53).

### E. Smart Communications Attempts Political Pressure

Undeterred yet again, Smart Communications decided to send a letter to twenty-one Rutherford County Commissioners—members of an independent branch of Rutherford County government separate from the Sheriff and the operation of the Rutherford County Adult Detention Center—in an attempt to exert political pressure, to intimidate, and coerce Sheriff Fitzhugh and the Rutherford County Adult Detention Center to install Smart Communications MailGuard software and hardware. (Ex. G, letter from J. Logan to Rutherford County Commissioners, Jan. 30, 2020).

Moreover, Smart Communications does not appear to respect the Rules of Professional Ethics or to honor the proper functioning of the legal system. (See Comment to ABA Rule 4.2, "This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounseled disclosure of information relating to the representation."). As stated above, Smart Communications asked whether the Rutherford County Officials would communicate with or meet directly with Jim Logan as President of Smart Communications. Rutherford County declined that offer and asked to be contacted through counsel of record. (*See above* email from Bahou to Grier, Nov. 9, 2019 at 7:14 p.m.) (emphasis added).

### F. Smart Communications Refuses to Stop Sending Settlement Demands to Parties Represented by Counsel

Upon learning of Plaintiff's action, Mr. Bahou contacted Plaintiff's counsel by email and demanded Plaintiff immediately cease and desist communications with Rutherford County officials regarding the matter. (*See* Exhibit H, email from Bahou to Grier, Jan. 30, 2020). Plaintiff declined to do so. On February 4, 2020, Mr. Bahou sent a formal letter to Plaintiff's counsel reiterating the demand that Plaintiff cease and desist communications with Rutherford County

officials. (*See* Exhibit I, letter from Bahou to Grier, Feb. 4, 2020). Counsel held a telephonic meet-and-confer on February 5, 2020 on the issue, during which Plaintiff's counsel indicated their opposition to the relief requested herein by Defendants.

## LAW AND ARGUMENT

1. Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

2. Rule 4.2 of the American Bar Association Model Rules of Professional Conduct provides "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

3. In analyzing corollary rules with identical language to Model Rule 4.2, federal courts have found that "an attorney who innocently, mistakenly or negligently conducts *ex parte* communications with a party represented by counsel" still violates the rule, and may be subject to disciplinary action. *See Faison v. Thornton*, 863 F. Supp. 1204, *1213 (D. Nev. July 6, 1992) (granting protective order and disqualifying plaintiff's counsel for *ex parte* communications with defendants).

4. Comment 4 to Tennessee Model Rule 4.2 generally permits parties to communicate with each other about the subject of ongoing litigation. However, federal courts in Tennessee have found violation of Rule 4.2 where attorneys failed to consult counsel of record about settlement, determining such settlement negotiations were not undertaken in good faith. *See Evans v.*

*Professional Transportation, Inc.*, No. 1:12-cv-202, 2014 U.S. Dist. Lexis 66362 (E.D. Tenn. Apr. 23, 2014).

5. Smart Communications has attempted to settle this case no less than *eleven (11) times*: on August 26, 2019 via telephone call with Defendants' internal counsel Nicholas C. Christiansen; on September 5, 2019 via telephone call with Mr. Christiansen; on September 12, 2019 via email to Mr. Christiansen; on September 19, 2019 via email to Mr. Christiansen; on October 7, 2019 via email to Defendants' external counsel André J. Bahou; on November 5, 2019 via telephone call with Mr. Bahou; on November 7, 2019 at 9:23 P.M. via email to Mr. Bahou with an attached letter addressed to Rutherford County Mayor Bill Ketron and Defendant Sheriff Michael Fitzhugh; on November 14, 2019 via email to Mr. Bahou; on November 21, 2019 via telephone call with Mr. Bahou; on December 20, 2019 via filing of Plaintiff's Motion for Judicial Settlement Conference; and most recently, on January 30, 2020 via letter addressed directly to the District Commissioners of Rutherford County.

6. Defendants have respectfully declined Plaintiff's offers of settlement. Nonetheless, Plaintiff has continued to press the issue.

7. Plaintiff's January 30, 2020 letter to the Rutherford County District Commissioners is improper and coercive. Commissioners do not have authority to require that Rutherford County Adult Detention Center install Smart Communications MailGuard software, and cannot negotiate individually. The Rutherford County Sheriff, Defendant Michael Fitzhugh, is a separately elected official that has responsibility for the Rutherford County Adult Detention Center. Plaintiff's actions were intended to exert political pressure on the Sheriff through the Commissioners, thereby forcing settlement. Plaintiff's actions bypassed both the Court's Order denying Plaintiff's Motion

for Judicial Settlement Conference and instructions from Defendants' counsel not to communicate settlement offers directly to Defendants.

8. Plaintiff attempts to argue that its January 30 letter was sent before the Court's January 30 Order denying the motion for judicial settlement conference. If true, that fact is even more telling because Smart Communications sought to exert political pressure for settlement--regardless of how the Court ruled on Smart Communications' pending motion to force a judicial settlement conference.

9. Plaintiff has been on notice since at least September 19, 2019 that Defendants are represented by counsel. (*See* Dkt. 21, Notice of Appearance by Andre J. Bahou on behalf of All Defendants).

10. Further, Defendants' counsel specifically confirmed to Plaintiff's counsel in writing on November 9, 2019 that "my client requested that <u>all communications and settlement offers</u> be presented to me as **counsel**." (*See above* email from Bahou to Grier, Nov. 9, 2019 at 7:14 p.m.) (emphasis added).

11. A protective order should issue where, as here, Plaintiff has repeatedly directed settlement offers to Rutherford County officials for the improper purpose of generating political pressure on Defendants, in violation of the instructions of Defendants' counsel, in violation of the spirit of Rule 4.2, and in violation of the Court's January 30, 2020 Order denying Plaintiff's Motion for Judicial Settlement Conference.

## <u>RULE 7.01(a)(1) STATEMENT</u>

In addition to written correspondence on January 30, 2020, voice mail messages on January 31, email messages on February 3, emails and letter of February 4, and emails of February 5, Counsel for Defendants conducted a teleconference on February 5 with Counsel for Plaintiff

(including Mr. Jason Grier, Ms. Katrina Quicker, and Mr. Greg Reynolds) and Counsel for Intervenor VendEngine (including Mr. Edward Ramage and Mr. Anthony Schlehuber). Defendants requested that Smart Communications executives not contact the Rutherford County Sheriff, the Mayor, Rutherford County Commissioners, or other Rutherford County officials. Mr. Grier stated that Smart Communications would not agree to that request and that Plaintiff would oppose this motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court Amend the Protective Order to add Proposed Paragraph 15 in the [Proposed] First Amended Protective Order (attached as Ex. A to the Declaration of André J. Bahou) or other reasonable language to limit Smart Communications from further intimidation and/or communications that exert political pressure to install its MailGuard software at the Rutherford County Adult Detention Center.

Dated: February 14, 2020

Respectfully Submitted,

/s/ André J. Bahou
André J. Bahou (TN BPR 028621)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 850-8069
AJ.Bahou@wallerlaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served via Court's ECF System to the following recipients on February 14, 2020:

Gregory S. Reynolds
John David Clark
Riley, Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
greyreynolds@rwjplc.com
dclark@rwjplc.com

Katrina M. Quicker
Jason P. Grier
Baker & Hostetler LLP (Atlanta)
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
jgrier@bakerlaw.com
kquicker@bakerlaw.com

*Attorneys for Plaintiff*

Edward Ramage
Baker Donelson Bearman,
Caldwell & Berkowitz PC
211 Commerce Street, Suite 800
Nashville, TN 37201
T: (615) 726-5771
F: (615) 744-5771
eramage@bakerdonelson.com

*Attorneys for VendEngine, Inc.*

/s/ André J. Bahou
André J. Bahou