# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS,<br><br>Plaintiff,<br><br>v.<br><br>RUTHERFORD COUNTY, TENNESSEE; MICHAEL FITZHUGH, *in his official capacity as Rutherford County Sheriff*; KEITH D. LOWERY, *in his official capacity as Deputy Chief of Rutherford County Sheriff's Office*; RUTHERFORD COUNTY ADULT DETENTION CENTER; and CHRISTOPHER FLY, *in his official capacity as Deputy Chief of Rutherford County Adult Detention Center*,<br><br>Defendants, and<br><br>VENDENGINE, INC.<br><br>Intervenor. | CIVIL ACTION NO. 3:19-cv-00714<br><br>**District Judge Richardson**<br>**Magistrate Judge Frensley** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO AMEND PROTECTIVE ORDER

For the reasons set forth herein, HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings ("Smart Communications") hereby opposes, and respectfully requests that the Court deny, Defendants Rutherford County, Tennessee's; County Sheriff Michael Fitzhugh's; Chief Deputy Keith D. Lowery's; Rutherford County Adult Detention Center's; and Deputy Chief Christopher Fly's (collectively, "Defendants") Motion to Amend Protective Order (Dkt. 61).

## I. INTRODUCTION

Defendants' motion to amend the agreed-upon protective order is pretextual and diversionary. Smart Communications has done nothing wrong here, and Defendants know it.

The instant dispute stems from a *single letter* offering to settle the lawsuit that Smart Communications' President Jim Logan sent directly to the Rutherford County Commissioners—the individuals with the authority to settle this lawsuit on behalf of named defendant Rutherford County. Mr. Logan's settlement letter speaks for itself; it was neither "intimidating" nor "coercive," and Mr. Logan was entirely within his rights to send it. Moreover, Mr. Logan did not send the letter to threaten Rutherford County, or any of the other Defendants, but rather he sent it out of a seemingly valid concern that the Rutherford County Commissioners were being kept in the dark regarding Smart Communications' settlement offers. Nevertheless, after multiple failed attempts to penetrate Smart Communications' attorney-client privileged communications, Defendants now persist with filing their spurious Motion replete with exaggerations and levying unfounded accusations of professional misconduct that only unnecessarily burdens the already-busy Court, delays the litigation's progress, and diverts Smart Communications' time and resources otherwise focused on discovery.

Conspicuously missing from Defendants' Motion is the fact (1) that there is zero evidence that counsel for Smart Communications had anything to do with Mr. Logan's efforts to settle with the Rutherford County Commissioners, (2) that Mr. Logan is *not* a lawyer, and (3) that Model Rule of Professional Conduct 4.2 expressly contemplates principal-to-principal settlement communications, and finds such efforts entirely appropriate during litigation. Accordingly, Defendants failed to demonstrate good cause to justify amending the stipulated Protective Order to include provisions that improperly prohibit party-to-party communications. Consequently, Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND

Through mischaracterizations and reckless omissions, the "Factual Summary" set forth in Defendants' Memorandum of Law in Support of their Motion (Dkt. 62) ("the Motion") paints an inaccurate picture of the history of the Parties' settlement negotiations and the purpose of Mr. Logan's settlement letter.

### A. Defendant Rutherford County invited settlement discussions.

Smart Communications has never "forc[ed]" Defendants to engage in settlement discussions. (Dkt. 62 at 2.) Indeed, at the very start of this litigation, it was *Rutherford County* who wanted to pursue settlement in an effort to avoid protracted litigation. *See, e.g.*, Plaintiff's Mot. for a Judicial Settlement Conf. (Dkt. 39) at ¶¶ 1, 6, 26. All of the Parties' subsequent back-and-forth occurred only in furtherance of Defendants' stated goal of settlement, including the November 7, 2019 letter sent from Jim Logan to Rutherford County Mayor Bill Ketron and Sheriff Fitzhugh (Dkt. No. 63-6).

Importantly, Mr. Logan's November 7 letter, which simply set forth the parameters of a potential business resolution, *was expressly requested by Defendants' counsel Mr. Bahou* during the Parties' meet-and-confer conversations related to the preparation of the Initial Case Management Order. *See* Dkt. 39 at ¶¶ 17-18; *see also* Mr. Grier's Nov. 7, 2019 Email to Mr. Bahou (Dkt. 63-5) ("Thanks again for working with us today on the proposed case management order. Further to our conversations over the past few days regarding settlement, attached is a letter from our client to Rutherford County's Sheriff and County Mayor . . . providing the high-level parameters of a potential settlement framework."). Moreover, contrary to Defendants' assertion, Mr. Logan's November 7 letter did not "demand" a meeting on Veterans Day—the text of the letter pasted into Defendants' Motion proves Defendants' mischaracterization. *See*

3

Mot. at 4 (citing Mr. Logan's Nov. 7 Letter ("We . . . *propose* that we meet on Monday, November 11, or soon as practicable thereafter.") (emphasis added)).

### B. The installation and use of Smart Communications' software has never been the sole settlement option.

Incorrectly, Defendants' Motion repeatedly contends that Smart Communications' settlement offers, and the various letters and emails communicating those offers, were an improper attempt to require Rutherford County to install and begin using Smart Communications' patented MailGuard® technology. *See, e.g.*, Mot. at 2. But the facts surrounding the Parties' settlement negotiations—and even the content of Defendants' own Motion—belie that contention. Indeed, Defendants' Motion refers to "two potential settlement options." *See* Mot. at 3. And while Defendants' ignore "Option 1"—as they must in order to inaccurately characterize Smart Communications' settlement efforts as "bordering on patent misuse" (Mot. at 4)—the Parties' settlement communications, including Mr. Logan's January 30 settlement letter that forms the basis for Defendants' Motion, repeatedly refer to and describe that particular settlement "option." *See, e.g.*, Jim Logan's Jan. 30, 2020 Settlement Letter (Dkt. 63-7) at 1 (explaining that one settlement option would be for Defendants to "[d]iscontinue use of the infringing postal mail elimination technology" in exchange for Smart Communications dismissing the infringement action and foregoing its claims for past damages and attorneys' fees). Defendants unquestionably would agree that a resolution of this litigation resulting in Defendants no longer using the accused, infringing postal-mail-elimination technology would be squarely in line with "the U.S. constitutional right to exclude others under the Patent Law." Mot. at 3.

### C. Smart Communications' January 30, 2020 settlement letter was borne out of frustration relating to the belief that Sheriff Fitzhugh, or some other individual,[1] was impeding resolution or refusing to communicate with all of the Defendants regarding potential settlement.

Smart Communications previously chronicled the settlement exchanges that took place over the preceding six months following Rutherford County's expressed desire to resolve this dispute rather than litigate it, and its repeated requests for a settlement demand from Smart Communications. *See generally* Dkt. 39. During that process, Smart Communications came to believe, likely for good reason, that Sheriff Fitzhugh's hurt feelings were impeding resolution. *See, e.g.*, Mr. Bahou's Oct. 8, 2019 Email to Mr. Grier (Dkt. 63-4) at 2 (explaining that he had "socialized the settlement offer with the county officials[,]" but that there was "some internal resistance"). Indeed, Smart Communications' counsel raised those concerns on the December 20, 2019 telephone conference with the Court regarding Smart Communications' desire to request a Judicial Settlement Conference. Moreover, deposition testimony provided by Sheriff Fitzhugh in this case reveals his belief that he has no reason to communicate with the other Defendants, in particularly Rutherford County leadership, regarding matters pertaining to this litigation. For example, during his February 12, 2020 deposition, Sheriff Fitzhugh testified as follows:



---

[1] Notably, the Tennessee Rules of Professional Conduct make clear that counsel must promptly inform *all* clients of any settlement offers received from the opposing party. *See* Tenn. Sup. Ct. R. 8, RPC 1.4, Comment 2 (emphasis added).

5



Excerpts of Deposition Tr. of Sheriff Michael Fitzhugh ("Fitzhugh Tr.") (attached as Ex. A to the Declaration of Jason P. Grier ("Grier Decl.") filed herewith) at 101:19-103:9 (emphasis added). In addition, when questioned about whether he ever spoke to any Rutherford County Commissioners about Mr. Logan's January 30 settlement letter, Sheriff Fitzhugh testified:



*Id.* at 141:1-141:11.

To ensure that all Defendants were made aware of and had a complete understanding of Smart Communications' settlement offer, Mr. Logan sent the January 30 settlement letter to each of the Rutherford County Commissioners.[2] Importantly, despite Defendants' characterization of Mr. Logan's January 30 settlement letter (*see* Mot. at 7), the letter was neither intimidating nor coercive; rather it merely laid out (in a non-accusatory, non-threatening way) the Parties'

---

[2] Notably, while sent on the same day, Mr. Logan sent his January 30 settlement letter *before* the Court denied Smart Communications' Motion for a Judicial Settlement Conference. *See* Dkt. 53.

6

previously discussed settlement options. *See* Jim Logan's Jan. 30, 2020 Settlement Letter (Dkt. 63-7) at 1-2.

**III.     ARGUMENT**

Federal Rule of Civil Procedure 26(c)(1)(A) provides that "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The rule requires that the Court find "good cause" for the entry of a protective order, and it specifically permits the Court to forbid disclosure or discovery, specify terms for disclosure or discovery, prescribe a discovery method other than the one selected by the party seeking discovery, forbid inquiry into certain matters, limit the scope of disclosure, designate persons who may be present while discovery is conducted, seal depositions and other documents and information, and prohibit trade secrets and other commercially sensitive information from being revealed. *See* Fed. R. Civ. P. 26(c)(1)(A)-(H). Once a protective order is in place, however, a movant seeking to modify an existing, agreed-to order faces a heightened burden of good cause to show "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." *Martindale v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2nd Cir. 1979).

Here, there is no extraordinary circumstance or compelling need that justifies modifying the stipulated Protective Order in order to *prevent* the Parties' principals from directly communicating. And any reference to violations of an attorney's professional or ethical obligations as a result of such permissible party-to-party communication is nothing more than Defendants' construction and then criticism of a proverbial straw man.

Tennessee Rule of Professional Conduct 4.2—which is identical to ABA Model Rule of Professional Conduct 4.2—explains that "[i]n representing a client, a *lawyer* shall not communicate about the subject of the representation with a person the *lawyer* knows to be

7

represented by another lawyer in the matter, unless the *lawyer* has the consent of the other lawyer or is authorized to do so by law or a court order." Tenn. Sup. Ct. R. 8, RPC 4.2 (emphasis added). Understandably, that "rule is designed to preserve the integrity of the attorney-client relationship by protecting the represented party from the superior knowledge and skill of the *opposing lawyer*." *Faison v. Thornton*, 863. F. Supp. 1204, 1213 (D. Nev. 1993) (emphasis added).

The comments to RPC 4.2, however, make abundantly clear that "*[p]arties to a matter may communicate directly with each other . . . .*" Tenn. Sup. Ct. R. 8, RPC 4.2, Comment 4 (emphasis added).[3] The scenario described in Comment 4 to RPC 4.2 is precisely what happened here—Smart Communications (through its President Jim Logan) sent a settlement communication directly to Defendant Rutherford County through Rutherford's County Commissioners. *See generally* Jim Logan's Jan. 30, 2020 Settlement Letter (Dkt. 63-7). Based on Comment 4's clear language, Mr. Logan's January 30 settlement letter was neither improper nor unethical.

Comment 4 also makes clear that "a lawyer is not prohibited from advising a client concerning a [party-to-party] communication that the client is legally entitled to make." Tenn. Sup. Ct. R. 8, RPC 4.2, Comment 4. Thus, while Smart Communications' outside counsel has repeatedly explained to Defendants that they neither instructed nor advised Smart Communications to directly contact Rutherford County, had they done so, it would not have been improper. *See id.* In view of Comment 4's unmistakably clear language that expressly permits

---

[3] The cited portion of Comment 4 to RPC 4.2 is identical to the language of Comment 4 to ABA Model Rule 4.2.

party-to-party communications like Smart Communications' January 30 settlement letter, there is no need for the Court to amend the stipulated Protective Order to prevent such communications.

The cases Defendants rely upon in support of their Motion—*Faison v. Thornton and Evans v. Professional Transportation, Inc.*—do not require a different outcome. Indeed, those cases are clearly distinguishable from the facts here, because both deal with instances where *attorneys* directly contacted or negotiated on behalf of parties that they knew were represented by counsel without involving those parties' counsel. *See Faison*, 863 F. Supp. 1204 at 1214; *Evans v. Prof'l Transp., Inc.*, No. 1:12-cv-202, 2014 WL 1908808, at *7 (E.D. Tenn. May 13, 2014). Again, that is not the scenario before the Court with respect to Defendants' Motion. Try as they might, Defendants cannot manufacture an ethical violation where one does not exist.

At the end of the day, it is Defendants' Motion that smacks of harassment. Indeed, glaringly absent from the Exhibits filed by Defendants in support of their Motion is an email communication from Smart Communications' outside counsel, Mr. Grier, to Mr. Bahou in which Smart Communications' counsel, relying on and citing the above-referenced language from Comment 4 to ABA Model Rule 4.2 (again, identical to Comment 4 to RPC 4.2), informed Defendants that there was nothing unethical or improper about the complained-of January 30 settlement letter. *See* Mr. Grier's Feb. 3, 2020 email to Mr. Bahou (attached as Ex. B to the Grier Decl.) at 1. Yet even in the face of clear authority showing that their Motion was destined to fail and lacked a good-faith basis, Defendants persisted in filing it. But for the reasons set forth above, Defendants' Motion should be denied.

### IV. CONCLUSION

The settlement letter was neither threatening nor coercive, and Smart Communications' attorneys never violated Tennessee Rule of Professional Conduct 4.2 (or ABA Model Rule 4.2). Accordingly, there is no good cause to justify amending the stipulated Protective Order to

9

prevent Smart Communications principals from communicating directly with Rutherford County government officials (or any other party to this litigation). Such party-to-party communications are neither improper nor unethical, and Smart Communications is entitled to have them. The Court should deny Defendants' Motion.

Dated: February 28, 2020          Respectfully submitted,

*/s/ Jason P. Grier*
Gregory S. Reynolds (18204)
J. David Clark (36761)
Riley Warnock & Jacobsen, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
greynolds@rwjplc.com
dclark@rwjplc.com

Katrina M. Quicker (*pro hac vice*)
Jason P. Grier (*pro hac vice*)
Baker & Hostetler LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, GA 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
kquicker@bakerlaw.com
jgrier@bakerlaw.com

*Attorneys for HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings*

# CERTIFICATE OF SERVICE

        I hereby certify that the foregoing was filed using the Court's ECF System, and should be served upon the following counsel of record by ECF notice on February 28, 2020.

| | |
|---|---|
| André J. Bahou (TN BPR 028621)<br>WALLER LANSDEN DORTCH & DAVIS, LLP<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 37219<br>(615) 850-8069<br>AJ.Bahou@wallerlaw.com<br><br>*Attorney for Defendants* | Edward Ramage<br>Baker Donelson Bearman, Caldwell & Berkowitz PC<br>211 Commerce Street, Suite 800<br>Nashville, TN 37201<br>T: (615) 726-5771<br>F: (615) 744-5771<br>eramage@bakerdonelson.com<br><br>*Attorney for Intervenor* |

        /s/ *Jason P. Grier*
        Jason P. Grier (*pro hac vice*)