IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS, | ) ) ) | |
| | ) | NO. 3:19-cv-00714 |
| Plaintiff, | ) | JUDGE RICHARDSON |
| | ) | |
| v. | ) | |
| | ) | |
| RUTHERFORD COUNTY, TENNESSEE, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendants' Motion [to Dismiss] for Lack of Personal Jurisdiction and Subject Matter Jurisdiction. (Doc. No. 56, "Motion"), supported by a memorandum in support thereof (Doc. No. 57). Plaintiff has responded. (Doc. No. 68, "Response"). Defendants have replied. (Doc. No. 78, "Reply").[1] The Motion is ripe for review.

For the reasons discussed herein, the Court will deny in part and grant in part the Motion.

## BACKGROUND[2]

On May 14, 2019, the United States Patent and Trademark Office issued the Asserted Patent, entitled "Correctional Postal Mail Contraband Elimination System" to Smart

---

[1] When herein citing pages in the parties' filings, the Court has endeavored for the sake of consistency to cite the Clerk's Office's pagination, and not the (sometimes different) pagination of the author/filer of the Motion.

[2] The Court has taken these facts from the Complaint for purposes of providing background information. The Court does not necessarily have to accept the assertions in the Complaint as true for purposes of a 12(b)(1) motion. However, the Court notes that the parties do not appear to dispute the relevant facts for purposes of resolving this Motion.

Communications IP (the business name under which Plaintiff does business). (Doc. No. 1 at ¶¶ 11, 12). Plaintiff focuses its products on eliminating the need for physical mail in the United States prison system and reducing the amount of contraband that enters prisons through the mail. (*Id.* at ¶¶ 13-16). The two relevant products owned by Plaintiff are branded as MailGuard and MailGuard Postal Mail Elimination. (*Id.* at ¶ 15). This MailGuard technology is used by jails and prisons throughout the United States. (*Id.* at ¶ 17).

In mid-2017, Plaintiff met with Defendant Rutherford County and Defendant Rutherford County Adult Detention Center ("RCADC") officials, performed a demonstration of its technology, and informed them that the technology was subject to a patent application (which ultimately was granted). (*Id.* at ¶ 19). During the demonstration of the technology, Plaintiff included a detailed description of how its MailGuard system worked. (*Id.*). Defendants indicated an interest in Plaintiff's MailGuard Postal Mail Eliminatory and electronic messaging system, and Defendant RCADC instructed its commissary vendor, VendEngine, Inc. (which is an Intervenor to the present action), to work with Plaintiff to bring the technology to RCADC prisons by way of an integrated platform. (*Id.* at ¶ 20). The parties thereafter executed a nondisclosure agreement. (*Id.* at ¶ 21). After exchanging communications regarding the implementation of the MailGuard technology, VendEngine and Defendant RCADC stopped communicating with Plaintiff. (*Id.*).

Then, in June 2018, VendEngine confirmed that it was launching, and RCADC would be implementing, a new digital "MailRoom" application. (*Id.* at ¶ 22). Plaintiff claims that this "MailRoom" technology was developed after VendEngine learned about Plaintiff's similar product (MailGuard) and the value the product could have to RCADC. (*Id.* at ¶ 23). VendEngine then allegedly copied Plaintiff's MailGuard Postal Mail Elimination System product. (*Id.*).

Plaintiff believes that this "MailRoom" technology, which is currently in use by Defendant RCADC, infringes on Plaintiff's patent. (*Id.* at ¶ 25). The "MailRoom" technology provides onsite mail scanning, which allows the facility to process and digitize postal mail, and then allows the inmate to view the digitized mail directly on a kiosk. (*Id.*). The technology also allows for a facility to flag any physical mail that may contain contraband or other inappropriate content. (*Id.*). As a result, Plaintiff alleges that the VendEngine MailRoom application infringes the Asserted Patent. (*Id.* at ¶ 26).[3]

---

[3] This patented process consists of, specifically:

> (1) receiving postal mail at the RCADC and associating that mail with an intended inmate recipient; (2) screening the postal mail for contraband; (3) scanning the postal mail; (4) generating a text-readable electronic copy of the scanned postal mail for investigative and inmate-delivery purposes; (5) electronically storing the electronic copy of the scanned postal mail for storage and review by RCADC personnel; (6) flagging the electronic copy of the postal mail if it is found to contain contraband or other inappropriate content; (7) denying delivery of any electronic copies of postal mail that are found to contain contraband or other inappropriate content; (8) electronically delivering approved copies of the scanned postal mail to the intended inmate recipient for viewing on a remote kiosk; and (9) logging details relating to the inmate recipient's access and review of the electronic copy of the scanned postal mail.

(Doc. No. 1 at ¶ 33). The components contained in the allegedly infringing device are:

> (1) a scanning station capable of creating a text-readable electronic copy of postal mail received at the RCADC, and including an input interface capable of (a) attaching recipient-inmate information to the electronic copy of the postal mail and associating the electronic copy of the postal mail with an email account belonging to the intended inmate recipient, and (b) associating the electronic copy of the postal mail with an access flag that denies access to the intended inmate recipient if the electronic copy of the postal mail contains contraband or other inappropriate content; (2) a server in communication with the scanning station and a network, such that the scanning station communicates the electronic copy of the postal mail and its identifying information to the server for storage; (3) a remote kiosk in communication with the server that is capable of sending and receiving electronic mail, through which the intended inmate recipient can access the electronic copy of the postal mail; and (4) a viewing station in communication with the server, through which RCADC personnel can screen and review the electronic copy of the postal mail prior to delivery to the intended inmate recipient.

(*Id.* at ¶ 34).

On June 28, 2019, counsel for Plaintiff wrote to Defendant Fitzhugh (copying Defendants Lowery and Fly) to identify the Asserted Patent and express concerns over the possible infringement of the VendEngine MailRoom application. (*Id.* at ¶ 29). Defendant Fitzhugh informed Plaintiff that they would not change their conduct in response to the letter. (*Id.* at ¶ 30).

Plaintiff thereafter brought this lawsuit against Defendants Rutherford County, Tennessee, its County Sheriff Michael Fitzhugh (only in his official capacity), and its Deputy Chief of the Sheriff's Officer Keith D. Lowery (only in his official capacity), as well as the RCADC and its Deputy Chief Christopher Fly (only in his official capacity).[4] The Complaint brings two counts: patent infringement (Count I) and deprivation of federal rights (Count II). Plaintiff requests damages, attorney's fees, treble damages under the Patent Act, a permanent injunction, and other relief.

## LEGAL STANDARD[5]

---

[4] The Court refers throughout this opinion to Defendants Fitzhugh, Lowery, and Fly as the "Individual Defendants."

[5] Defendants purport to bring this Motion pursuant to rules 12(b)(1), 12(b)(2), and 12(h)(3). (Doc. No. 56 at 1). The case law is conflicted regarding the subsection of Rule 12 under which such a motion should be brought regarding sovereign immunity under the Eleventh Amendment in the Sixth Circuit. *E.g.*, *Martinson v. Regents of Univ. of Michigan*, 562 F. App'x 365, 370 (6th Cir. 2014) (employing both 12(b)(1) and 12(b)(6)); *Castanias v. Lipton*, No. CIV.A. 11-296-HJW, 2011 WL 3739035, at *4 (S.D. Ohio July 14, 2011), *report and recommendation adopted*, No. C-1-11-296, 2011 WL 3705971 (S.D. Ohio Aug. 24, 2011) (same); *Uttilla v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W.D. Tenn. 1999), *aff'd sub nom. Uttilla v. Tennessee Highway Dep't*, 208 F.3d 216 (6th Cir. 2000) (considering a facial challenge under 12(b)(1)); *Seider v. Hutchison*, No. 3:06-CV-215, 2009 WL 2430824, at *5 (E.D. Tenn. Aug. 5, 2009) ("The Sixth Circuit has recognized that " '[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power,' the defense 'is not coextensive with the limitations on judicial power in Article III.' Thus, the Court does not believe that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) would be proper based on the Eleventh Amendment. However, Defendant [] has also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against him, which permits dismissal when there is an unsurmountable bar on the face of the complaint." (quoting *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (internal citation omitted)); *U.S. ex rel. Moore v. Univ. of Michigan*, 860 F. Supp. 400, 402 (E.D. Mich.

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

---

1994) (when motion to dismiss on Eleventh Amendment grounds was brought under both 12(b)(1) and (12)(b)(6), noting that "[a] complaint that is barred by the Eleventh Amendment fails to state a claim upon which relief can be granted, and hence, should be dismissed by this Court. Fed. R. Civ. P. 12(b)(6)."); *Darwall v. Michigan Dep't of Corr.*, 933 F.2d 1007 (6th Cir. 1991) (finding dismissal on Eleventh Amendment grounds proper when brought solely under 12(b)(6)).

However, it has been the practice (a prudent one, in the view of the undersigned) of this Court to view challenges to jurisdiction under the Eleventh Amendment as factual challenges under 12(b)(1). *Dunn v. Spivey*, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009); *Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *2 (M.D. Tenn. July 12, 2016); *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 563 (M.D. Tenn. 2011); *Hemenway v. 16th Judicial Dist. Attorney's Office*, No. 3:15-CV-00997, 2020 WL 6364486, at *3 (M.D. Tenn. Oct. 29, 2020); *see also Giorgadze v. Tennessee Tech. Ctr.*, No. 2:06CV264, 2007 WL 2327034, at *2 (E.D. Tenn. Aug. 10, 2007). The undersigned himself has done so. *CHS/Cmty. Health Sys., Inc. v. Med. Univ. Hosp. Auth.*, No. 3:20-CV-00163, 2021 WL 964047, at *6 (M.D. Tenn. Mar. 15, 2021) (Richardson, J.)

Additionally, motions to dismiss arguing that *Ex Parte Young* does not apply are typically brought under 12(b)(1), as this is an exception to Eleventh Amendment immunity. *See e.g.*, *Derezic v. Ohio Dep't of Educ.*, No. 2:14-CV-51, 2014 WL 4206580, at *2 (S.D. Ohio Aug. 25, 2014). The immunity from punitive damages asserted by Defendants is also typically referred to as a type of sovereign immunity (that is also applicable to municipalities), indicating that 12(b)(1) is an appropriate vehicle for this portion of the Motion as well. *E.g.*, *Katt v. City of New York*, 151 F. Supp. 2d 313, 317 (S.D.N.Y. 2001) (referring to "sovereign immunity from punitive damages"), *aff'd in part sub nom. Krohn v. New York City Police Dep't*, 60 F. App'x 357 (2d Cir. 2003), *and aff'd sub nom. Krohn v. New York City Police Dep't*, 372 F.3d 83 (2d Cir. 2004); *Toombs v. Manning*, 835 F.2d 453, 463 (3d Cir. 1987) ("The concepts of sovereign immunity and immunity from punitive damages arise from the same theoretical and historical underpinnings[.]"); *Baker v. Runyon*, 922 F. Supp. 1296, 1297 (N.D. Ill. 1996) ("Because the question of whether the Postal Service enjoys sovereign immunity from punitive damages is jurisdictional in nature, the court may address it any time." (internal citation omitted and citing Fed. R. Civ. P. 12(h)(3)), *rev'd on other grounds*, 114 F.3d 668 (7th Cir. 1997).

Therefore, the Court will consider the present Motion as one for lack of subject matter jurisdiction under 12(b)(2) and 12(h)(3). Fed. R. Civ. P. 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." As the Court considers this to be a motion for dismissal based on a claimed lack of subject-matter jurisdiction, the Court does not address Plaintiff's arguments regarding whether a motion for dismissal based on personal jurisdiction is proper. (Doc. No. 68 at 2).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990). The Sixth Circuit has noted that:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[6] *Gentek Bldg. Products, Inc.*,

---

[6] Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the

491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017) (discussing *Gentek*).

Defendants here lodge a factual attack on subject-matter jurisdiction. "An assertion of Eleventh Amendment sovereign immunity, as has been made by the defendants here, constitutes a factual attack." *Dunn v. Spivey*, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009); *see also Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *2 (M.D. Tenn. July 12, 2016); *Giorgadze v. Tennessee Tech. Ctr.*, No. 2:06CV264, 2007 WL 2327034, at *2 (E.D. Tenn. Aug. 10, 2007). Defendants bear the burden of proving that they are entitled to immunity under the Eleventh Amendment. *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 650 (6th Cir. 2013); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

---

present Motion without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

**DISCUSSION**

A.  **Whether Defendants are protected by Eleventh Amendment immunity**[7]

Defendants argue that they are acting as arms of the state and are therefore entitled to

protection under the Eleventh Amendment. (Doc. No. 57). Plaintiff responds that Defendants are

not arms of the state and are not entitled to protection under the Eleventh Amendment. (Doc. No.

68).

"The Judicial power of the United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the United States by Citizens of another State,

or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.[8] Under the Eleventh

Amendment, states and state agencies or departments have sovereign immunity from suit in federal

---

[7] Defendants state that Defendants Rutherford County, RCADC, and the Individual Defendants acting in their official capacities are arms of the State of Tennessee. (Doc. No. 57 at 5). However, Defendants proceed to focus most of their arguments relating to the Eleventh Amendment on Defendant Rutherford County. Defendants assert that, "because the RCADC, a division of the County, and the Individual Defendants, in their official capacities, are working at the behest of the County to provide functions of the State, they too are entitled to sovereign immunity from this action under the Eleventh Amendment." (Doc. No. 57 at 6).
    Defendants are correct that if Defendant Rutherford County has Eleventh Amendment immunity as to Plaintiff's claim for money damages, then the Individual Defendants do also. This is because where an arm of the state has Eleventh Amendment immunity, "the immunity also applies to actions against state officials sued in their official capacity for money damages." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Relatedly, as explained below, to the extent that a claim for damages is brought against an individual defendant in the defendant's official capacity, it is treated as a claim against the agency (or municipality) of which the defendant is an official. In other words, for purposes of Plaintiff's claim for damages, all Defendants are appropriately treated as if they were Defendant Rutherford County. So as to whether Eleventh Amendment immunity exists, the question need only be asked as to Defendant Rutherford County. Therefore, although there are multiple Defendants, and at times the Court refers to "[D]efendants," the Court likewise focuses this section on discussing Defendant Rutherford County.

[8] This immunity extends to patent suits. Though an amendment to the Patent Act purports to abrogate a State's immunity, Congress did not provide sufficient findings to support abrogation. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 647 (1999); *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1339 (Fed. Cir. 2006). Neither party disputes this or argues that any state immunity in this case has been properly abrogated.

court.[9] *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). However, political subdivisions of a state are not entitled to Eleventh Amendment immunity. *Ernst*, 427 F.3d at 355. The Sixth Circuit has indicated clearly that the issue, as to whether an entity associated somehow with a state is entitled to Eleventh Amendment immunity, is whether the entity is properly considered an "arm of the state" (in which case immunity exists) or a "political subdivision" of the state (in which case immunity does not exist). *See id.*

Binding precedent states that "[Eleventh Amendment] immunity 'does not extend to counties and similar municipal corporations.'" (*Ernst*, 427 F.3d at 358 (6th Cir. 2005) (quoting *Mt. Health City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). One might reasonably think that this precedent is conclusive of the present issue of whether Rutherford County is entitled to Eleventh Amendment immunity, and arguably it is. But the principle is apparently based on the assumption that counties (and similar municipal corporations, though none of them are involved in this case) in every state necessarily constitute political subdivisions of the state. And the Court is not averse to putting that assumption to the test in the specific context of Tennessee counties in light of applicable Tennessee law governing counties, and it does exactly that below.

The Sixth Circuit has summarized the factors to consider when determining whether an entity is an arm of the state:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

---

[9] States, agencies, instrumentalities, and "arms of the state" all are terms that generally refer to an entity that is entitled to immunity under the Eleventh Amendment. The Court uses these terms interchangeably, as appropriate, to refer to such an immune entity.

*Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015) (quoting *Ernst*, 427 F.3d at 359). The factors are not "a checklist," and they should be "weighed and balanced against each other based on the unique circumstances of the case." *Id.* at 778. "The only factor that gets special weight is the state's potential liability for judgment, which . . . creates a strong presumption that [an entity] is a state actor." *Id.* As previously noted, "[w]hether an entity qualifies is a question of federal law and the entity asserting the defense bears the burden of proof."[10] *Town of Smyrna, Tenn.*, 723 F.3d at 650; *Gragg*, 289 F.3d at 963.

The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")). This reality tends not to bode well for the prospects of a multi-factor test to resolve a question as a matter of law at the summary judgment stage.

---

[10] Both parties incorrectly state some of the relevant legal standards applicable when the Court examines the applicability of Eleventh Amendment immunity. Defendants seem to imply that Plaintiff, not Defendants, bear the burden. (Doc. No. 57 at 7-8). Though it is true that Plaintiff generally bears the burden of showing jurisdiction is proper, Defendants bear the burden of showing that Eleventh Amendment immunity applies (and thus defeats subject-matter jurisdiction). Plaintiff additionally incorrectly states that the Court should determine the capacity of Defendants to be sued in federal court by looking to state law, citing Fed. R. Civ. P. 17(b). *See Gristede's Foods, Inc. v. Unkechauge Nation*, No. 06-CV-1260 (CBA), 2006 WL 8439534, at *5 (E.D.N.Y. Dec. 22, 2006) ("[T]his Court is not convinced that Rule 17(b) requires the application of state law to determine whether a tribe is entitled to sovereign immunity.").

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020). The undersigned is well aware that room for disagreement exists with respect to the result of the outcome of the multi-factor test to be employed here. But after weighing each factor in turn, the Court believes that the factors collectively fail to show that Defendants are an arm of the state such that they should be afforded Eleventh Amendment immunity contrary to the general rule that counties are not afforded Eleventh Amendment immunity.

      1.   <u>Tennessee's potential liability for a judgment against Defendants</u>

Defendants have not addressed this first factor, which, as noted above, is the only factor of the analysis entitled to special weight. This Court has previously explained the appropriate analysis when determining whether a state has potential liability under the first factor:

> [T]he Sixth Circuit has clearly held that "it is the state treasury's potential legal liability for the judgment, not whether the state treasury will pay for the judgment in that case, that controls the inquiry." *Ernst*, 427 F.3d at 359 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). Accordingly, the court must ask "whether, hypothetically speaking, the state treasury would be subject to 'potential legal liability' if the [relevant entity] did not have the money to cover the judgment." *Id.* at 362 (quoting *Doe*, 519 U.S. at 431). In practice, the formal approach embraced by *Ernst* has proven a doubled-edged sword for entities seeking to assert sovereign immunity. On one hand, a plaintiff cannot overcome the State's potential liability merely by showing that the specific claim at issue can be satisfied with the entity's own funds. *Id.* On the other hand, however, an entity cannot rely on a so-called "reimbursement theory" to transform its own liability into a state liability based merely on "the state's willingness . . . to reimburse the entity for damages paid as a result of the judgment." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 326 (6th Cir. 2010). Rather, cases involving entities with independent revenue sources have typically looked to whether "a State's constitution and statutory law make the State responsible for funding [the entity's] programs" in the event of a shortfall. *Ernst*, 427 F.3d at 364. *Ernst*, for example, relied on a statutory provision requiring the state legislature to "annually appropriate to the retirement system the amount [of money needed] . . . to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed to adequately fund the retirement system for the previous fiscal year," Mich. Comp. Laws § 38.2302(1), as well as a constitutional provision, Mich. Const. art. 9, § 24, making that duty a " 'contractual obligation' owed by the State to each retiree." *Ernst*, 427 F.3d at 360 (citing *Musselman v. Governor*, 533 N.W.2d 237, 246 (1995) ("We hold that the state is obligated to prefund health care

benefits under art. 9, § 24.")); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 776 (6th Cir. 2015) (finding sovereign immunity where constitutional and statutory provisions required state to fund university), *petition for cert. filed*, Case No. 15-1419 (U.S. May 19, 2016).

> While *Ernst* focuses on the formal relationship between the state and the entity at issue, the Sixth Circuit's subsequent cases make clear that factual considerations are not irrelevant to the court's inquiry. In some cases, the relevant funding and enabling statutes alone may not "conclusively determine" whether the State potentially will be liable for a judgment against the entity. *See Barachkov v. 41B Dist. Court*, 311 Fed. Appx. 863, 867 (6th Cir. 2009). In such instances, a factual record of the concrete fiscal details of the entity's operations may be relevant. *See, e.g.*, *Lowe*, 610 F.3d at 326–28 (holding that statutes cited by entity, without additional factual support, were insufficient to carry burden of showing potential state liability); *Perry v. Se. Boll Weevil Eradication Found.*, 154 Fed. Appx. 467, 473 (6th Cir. 2005) (holding that the first *Ernst* factor disfavored application of sovereign immunity because "there is no indication that the state contributes to the fund" earmarked for funding entity).

*Gaffney*, 2016 WL 3688934, at *3.

Defendants have not provided the Court with any information regarding who will pay the judgment if one is rendered against Defendants. Defendants also have not provided the Court with any information on where Defendants' funding comes from. Plaintiff does cite to Tennessee statutes indicating that lawsuits should be allowed against counties. Tenn. Code Ann. § 5-1-105 ("Suits may be maintained against a county for any just claim, as against other corporations."); Tenn. Code Ann. § 8-8-302 ("Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office."). Though these statutes do not necessarily specify that the counties will pay judgments resulting from the suits against them, these statutes do indicate that Tennessee did intend for counties to be answerable in their own lawsuits in some sense; this at least suggests the possibility (which Defendants have done nothing to dispel) that they might be responsible for paying their own judgments.

Additionally, as the Court will discuss in more detail below, Defendants argue that the claim for punitive damages should be dismissed because any punitive damages would be awarded against a municipality (Rutherford County). (Doc. No. 57 at 16-17). As will be discussed below, and as Defendants themselves note, part of the reasoning behind not allowing punitive damages against a municipality is that taxpayers (who were not responsible for any wrongdoing) should not be saddled with punitive damages. Defendants seem to speak as if it would be taxpayers of the County, and not of the state generally, who would bear the cost of punitive damages. (*Id.*) The Court does not purport to know for sure that this is the case, but what it can say is that Defendants conspicuously fail to make any suggestion that it would be the state that would be financially responsible for any award of punitive damages. Therefore, Defendants' arguments regarding punitive damages indicate, if anything, that Defendant Rutherford County and not the state would ultimately be responsible for a judgment.

As noted above, Defendants carry the burden of showing that they are entitled to Eleventh Amendment immunity. Despite this burden, Defendants have submitted no evidence or even argument to enable this Court to determine who pays judgments against Defendants; nor have they shown or even discussed any other financial considerations or arrangements that may show that this factor leans in Defendants' favor. Plaintiff, however, has pointed the Court to statutes indicating that counties in Tennessee are responsible for their own lawsuits. Defendants also seem to imply, in arguing that punitive damages should not be allowed, that they are responsible for the judgment. Ruling on a similar situation with lackluster evidence and argument from a defendant, this Court previously found that the first factor weighed against finding Eleventh Amendment immunity, explaining that "[i]n order to establish that the potential for state liability favors an extension of sovereign immunity, [Defendant] must show—through citation to formal legal

obligations, a factual account of fiscal practice, or some combination of the two—that its liabilities are potentially liabilities of the state. It simply has not done so." *Gaffney*, 2016 WL 3688934, at *5. Defendants here similarly have not done so.[11]

Therefore, the Court finds that this first factor, which is "the most salient issue," leans strongly in favor of finding that Defendants do not qualify for Eleventh Amendment immunity. *Town of Smyrna, Tenn.*, 723 F.3d at 651; *CHS/Cmty. Health Sys., Inc. v. Med. Univ. Hosp. Auth.*, No. 3:20-CV-00163, 2021 WL 964047, at *6 (M.D. Tenn. Mar. 15, 2021) (Richardson, J.).

2. <u>How the state law and state courts define the entity and the degree of state control and veto power over the entity's actions</u>

Defendants argue that Tennessee defines local government entities, including counties, as arms of the state and that the State exerts control over Defendants. (Doc. No. 57 at 9).[12]

a. How state law and state courts define the entity

Defendants assert that "Tennessee has repeatedly defined local government entities—including counties—as arms of the State." (Doc. No. 57 at 9). Defendants cite to several different cases indicating that counties are arms of the state and an opinion by the Tennessee Attorney General indicating the same.

---

[11] One of the recent cases cited by Defendants in support of the second factor was predicated on the fact that a judgment against the City of Memphis would be paid by the state. *Bowers v. Nat'l Collegiate Athletic Ass'n, Act, Inc.*, 171 F. Supp. 2d 389, 402 (D.N.J. 2001) (discussed in *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 408 (3d Cir. 2003)). As Defendants have not argued who pays the judgment here, the Court is unpersuaded by this citation.

[12] Despite listing all of the factors when explaining the Sixth Circuit's approach in its brief, Defendants do not then discuss all of the factors, and instead break their discussion down into two categories, both of which seem to fall under the second factor: 1) "Tennessee Defines Local Government Entities as Arms of the State," and 2) "Entities Created by the State and Subject to State Statutory Oversight are Protected under Sovereign Immunity as Arms of the State." (Doc. No. 57 at 9-10). The second of the categories also includes a discussion which appears to relate to the fourth factor.

The opinions cited (which are mostly from the early 20th century) also show that state courts have found that counties (or municipalities more generally) are "arms of the state" in various contexts. *E.g.*, *Davis v. City of Knoxville*, 90 Tenn. 599, 18 S.W. 254, 254 (1891) ("Municipal corporations, such as counties, cities, and towns, are arms of the state, to whom has been delegated, for purposes of local government, a portion of the sovereign power of the state."); *Scates v. Bd. of Comm'rs of Union City*, 196 Tenn. 274, 280, 265 S.W.2d 563, 566 (1954) ("It would seem to logically follow, we thought, that this constitutional provision would apply to a county acting in its governmental capacity if it be a fact, as our cases hold, that in such a situation counties 'partake of the immunities of states while acting in a governmental capacity', and also since they are, in such capacity, only a 'governmental division of the state.'"); *Gregory v. City of Memphis*, 157 Tenn. 68, 6 S.W.2d 332 (1928) ("The complainant seems to have overlooked the fact that a municipal court is a part of the judicial system of the state, and that the municipality of Memphis is an arm of the state."); *Sneed v. City of Red Bank, Tennessee*, 459 S.W.3d 17, 24 (Tenn. 2014). ("[A]t common law, local governmental entities in Tennessee were 'considered arms of the State in the exercise of their governmental functions' and thus were protected by the doctrine of sovereign immunity when acting in their governmental capacities.")[13]. Additionally, the Tennessee Attorney General has stated: "Counties and municipalities operating in their governmental capacity fall within the doctrine of sovereign immunity because they are arms of the State and the State is said to have delegated sovereignty to them." Tenn. Op. Att'y Gen. No. 97-112 (Aug. 12, 1997).

---

[13] The Court notes that, like *Sneed*, many cases indicating that counties are an "arm of the state" in Tennessee were decided in the tort context, discussing a there-relevant difference between governmental interest versus proprietary interest. *The "governmental function" v "proprietary function" dichotomy,* 2 American Law of Torts § 6:9.

But these opinions are not very probative (and of course not binding) as to whether a Tennessee county is properly considered an "arm of the state" for Eleventh Amendment purposes. None of the opinions dealt with the issue of Eleventh Amendment immunity. The authors of these opinions evidently felt that using the metaphor "arm of the state" was helpful in addressing whatever state-law issues were being discussed in the opinion. But their use of the metaphor does not tell the Court very much about where Tennessee counties fall on "arm of the state"/"political subdivision" divide for Eleventh Amendment purposes.

And to the extent that state court opinions could be considered illuminating on that question despite not addressing the Eleventh Amendment, there are also opinions pointing in the opposite direction. Numerous Tennessee cases refer to counties as political subdivisions. *E.g.*, *Claiborne Cty. v. Jennings*, 199 Tenn. 161, 164, 285 S.W.2d 132, 134 (1955) ("It should be noted in passing that Claiborne County is neither an individual nor a private corporation. It is a political subdivision of the State[.]"); *Morris v. Snodgrass*, 886 S.W.2d 761, 763 (Tenn. Ct. App. 1994) ("Counties are political subdivisions of the State."); *Bradley Cty. Sch. Sys. by & through Bradley Cty. Bd. of Educ. v. City of Cleveland*, No. E201601030COAR3CV, 2017 WL 6598557, at *6 (Tenn. Ct. App. Dec. 27, 2017), *aff'd sub nom. Bradley Cty. Sch. Sys. v. City of Cleveland*, 575 S.W.3d 515 (Tenn. 2019) ("[B]oth the City and the County are local political subdivisions of the state."); *Washington Cty. Sch. Sys. by & through the Washington Cty. Bd. of Educ. v. City of Johnson City*, No. E201602583COAR9CV, 2017 WL 6603656, at *7 (Tenn. Ct. App. Dec. 27, 2017), ("[B]oth the City and the County are local political subdivisions of the state."), *aff'd sub nom. Washington Cty. Sch. Sys. v. City of Johnson City*, 575 S.W.3d 324 (Tenn. 2019). There are, additionally, various statutory provisions indicating that counties are political subdivisions. *E.g.*, Tenn. Code Ann. § 62-26-218 (including counties as political subdivisions for business tax purposes); Tenn. Code

Ann. § 29-20-102 ("'Governmental entity' means any political subdivision of the state of Tennessee including, but not limited to, any municipality, metropolitan government, county, utility district, school district . . .").

Ultimately, the Court finds Defendants' argument unpersuasive, as it is apparent that various Tennessee opinions (from courts and in one case from the attorney general) and statutes have referred to counties variously as "arms of the state" and as "political subdivisions." Indeed, in some cases counties have been referred to as both "subdivisions" and an "arm of the state" in the same sentence. *See, e.g.*, *Cunningham v. Broadbent*, 177 Tenn. 202, 147 S.W.2d 408, 409 (1941) ("The County is a subdivision and arm of the State, and the parties were dealing with governmental purposes and objects. Neither the Constitution of Tennessee, nor of the United States, imposes any restraint upon legislation affecting the contractual relations between the State and its political subdivisions, entered into in their governmental capacities and dealing with governmental functions." (citation omitted)). The Court cannot conclude that these opinions collectively suggest that a Tennessee county is more an "arm of the state" than a "political subdivision" for Eleventh Amendment purposes.

Additionally, there is much federal case law indicating that Tennessee counties are not entitled to Eleventh Amendment immunity, because essentially they are not arms of the state for Eleventh Amendment purposes. *Rhea v. W. Tennessee Violent Crime & Drug Task Force*, No. 217CV02267JPMCGC, 2017 WL 10636418, at *1 (W.D. Tenn. Dec. 29, 2017) ("States' sovereign immunity from suit is not absolute, however; although immunity attaches in suits brought against the State itself or an 'arm of the state,' it does not shield against lawsuits brought against 'counties and similar municipal corporations.'" (citation omitted)); *Lawson v. Shelby Cty., TN*, 211 F.3d 331, 335 (6th Cir. 2000) ("Even though a county is territorially a part of the state, it is also a corporation

created by it, and is therefore only a part of the state 'in that remote sense in which any city, town or other municipal corporation may be said to be a part of the state.' In this case, [the plaintiffs] filed suit against Shelby County and the Shelby County Election Commission. These entities are not protected by the Eleventh Amendment under *Luning*. Therefore, [the plaintiffs'] claims against these entities should not have been dismissed on Eleventh Amendment grounds." (citation omitted)); *Anderson v. Clarksville Montgomery Cty. Sch. Sys.*, No. 3:06-0324, 2006 WL 1639438, at *2 (M.D. Tenn. June 13, 2006) ("The Clarksville Montgomery County School System is not an arm of the state entitled to Eleventh Amendment immunity because the bar of the Eleventh Amendment does not extend to counties and similar municipal corporations.")

  b. State control

  The Court must also look at how much control the State exerts over Defendants, including any veto power. Defendants assert that Tennessee exercises a substantial degree of control over Defendants' actions in operating RCADC. (Doc. No. 57 at 10-11).

  The Complaint indicates that, according to state law, Defendants must comply with certain protocols and practices, promulgated by the Tennessee Corrections Institute. (Doc. No. 1 at ¶ 18). The relevant statute gives various powers to the Tennessee Corrections Institute, such as to establish minimum standards for facilities, establish guidelines for security, and conduct inspections. Tenn. Code Ann. § 41-4-140. Another provision directs the Tennessee Corrections Institute to provide training to counties and to evaluate county programs. Tenn. Code Ann. § 41-7-103.

  Defendants also assert that they are limited by state law specifically in regards to the handling of prisoner mail. Tennessee Business Enterprises, a state entity which provides gainful employment to blind individuals and allows them to handle vending facilities on public property

of the state, executes contracts related to inmate mail. (Doc. No. 58-1; Doc. No. 58-2; Doc. No. 57 at 11); Tenn. Code Ann. § 71-4-501. Additionally, the Rules of the Tennessee Corrections Institute Minimum Standards for Local Adult Correction Facilities contains specific rules regarding mail, including that "[b]oth incoming and outgoing mail shall be inspected for contraband items prior to delivery, unless received from the courts, attorney of record, or public officials, whether the mail shall be opened in the presence of the inmate." § 1400-01.11.[14]

These statutes and regulations seem to indicate that the State does involve itself to some extent in the day-to-day operations of Defendants. However, the Court is not aware of any "veto power" that the State maintains, which is also a relevant inquiry. *CHS/Cmty. Health Sys., Inc.*, 2021 WL 964047, at *8.

Overall, the Court finds that this factor weighs just slightly in favor of Defendants. Though there are some references in case law to counties being an "arm of the state," the Court is careful not to ascribe too much significance to that mere (metaphorical) label, choosing instead to look at the substance of Defendants' nature and Defendants' relationship with the State. Moreover, other parts of Tennessee law refer to counties as political subdivisions, which (as noted above) are not protected for Eleventh Amendment purposes. Though this labelling is not persuasive to the Court,

---

[14] This document, which is quoted in the Complaint, (Doc. No. 1 at ¶ 18), is available at https://www.tn.gov/content/dam/tn/commerce/documents/corrections/forms/TCI-Minimum-Standards-Rev-1-2018.pdf. The Court is able to take judicial notice of the contents of a government website. *See e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of contents of the Bureau of Prisons' website); *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 810 n.1 (M.D. Tenn. 2009) ("A court may take judicial notice of the contents of an Internet website."); *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under FED. R. EVID. 902, and courts may accordingly take judicial notice of the information found on these websites.").

the level of supervision and control the State exercises indicates that this factor weighs slightly in favor of Defendants.

### 3. Whether state or local officials appoint the board members of the entity

There is no indication of whether state or local officials appoint the board members of any of the Defendants. Defendants have not indicated who appoints the board members (if there are any). However, typically, officers of a county are elected by the people of the county. Tenn. Code Ann. § 5-1-104. As Defendants have the burden of showing that they are entitled to Eleventh Amendment immunity, the Court finds that this factor weighs against finding that Defendants are an arm of the state.

### 4. Traditional purview of state or local government

The Court has previously described how to determine whether an entity is performing a task traditionally in the purview of the state or local government:

> When applying the *Ernst* factors to a novel situation, the court is guided by the ultimate purposes underlying them.

> The directive to consider whether an entity's activities fall within the traditional purview of the state "stems from the importance of dignity in the origins of our sovereign immunity doctrine," because "if the agency in question carries out a long-recognized state function, it is a particular affront to a state to subject this agency to suit." *Pucci*, 628 F.3d at 764.

*Gaffney*, 2016 WL 3688934, at *9.

Defendants assert that their responsibility to securely house inmates is traditionally a state function. (Doc. No. 57 at 12). Additionally, courts have generally found that prisons serve a traditional state function. *Johnson v. Avery*, 393 U.S. 483, 486, 89 S. Ct. 747, 749, 21 L. Ed. 2d 718 (1969) ("There is no doubt that discipline and administration of state detention facilities are state functions."); *Jordan v. Mills*, 473 F. Supp. 13, 17 (E.D. Mich. 1979) ("[I]t does appear that regulation and administration of prisons are traditionally a state function."). Defendants also point

to the Constitution of the State of Tennessee, which authorizes the State to imprison criminals. Tenn. Const. Art I, § 8.[15]

Therefore, the Court finds that this factor weighs in favor of Defendants.

### 5. Other factors

The parties do not advance any additional factors, and the Court is aware of no additional factors that would affect its analysis.

### 6. Conclusion[16]

As noted above, the (binding) black-letter law is quite clear: Eleventh Amendment immunity does not extend to counties. *Ernst v. Rising*, 427 F.3d at 358. The only question, then, is whether there is something specific about Tennessee counties, considering the specifics of Tennessee law governing Tennessee counties, that would persuade the Court not to apply the black-letter law. Naturally, bound as it is by black-letter law, the Court must insist on very good grounds for making an exception to the black-letter law in the specific case of Tennessee counties.

The Court finds no such grounds after weighing all of the factors discussed above. The factors overall do not weigh in favor of finding that Defendants are entitled to Eleventh Amendment immunity despite the contrary binding general rule. The first and most important factor, whether the state will be responsible for a judgment against Defendants, clearly weighs

---

[15] Defendants also point to the statute which gives sheriffs of counties "the custody and charge of the jail for the county and of all prisoners committed to the jail . . ." Tenn. Code Ann. § 41-4-101. This, though, is rather neutral; it confirms that counties are involved in housing inmates (which was not subject to dispute anyway), but in and of itself it suggests that counties (through their sheriffs) have at least some autonomy from the state in exercising this responsibility.

[16] Because the Court finds that Eleventh Amendment immunity does not apply to Defendant Rutherford County, the Court similarly rejects Defendants' arguments that Eleventh Amendment immunity should protect the Individual Defendants. (Doc. No. 57 at 12-13). The Court also does not need to address Defendants' arguments that Plaintiff would not be left without recourse if the Court dismisses this case, that Tennessee has not waived immunity from patent suits, and that Defendants have not waived sovereign immunity. (*Id.* at 13-14; Doc. No. 78 at 2).

strongly against finding that Defendants are entitled to Eleventh Amendment immunity. The third factor, whether state officials appoint the board members of the entity, also weighs against finding that Defendants are entitled to Eleventh Amendment immunity. The second and fourth factors weigh in favor of Defendants. This is not sufficient to tilt the scales in Defendants' favor, especially given the effect of the (paramount) first factor.

The Court therefore finds that on balance, Defendants are not entitled to Eleventh Amendment immunity. This is consistent with the reality that counties are sued all the time in federal court without being afforded immunity. It is also consistent with the fact that Defendants were unable to cite a single case affording Eleventh Amendment immunity to a county (in Tennessee or elsewhere). It would be surprising indeed for a federal court suddenly to afford Eleventh Amendment immunity to a county, and this Court will not do so.

### B. *Ex Parte Young*

Defendants assert that *Ex Parte Young* does not apply to the Individual Defendants in this case. (Doc. No. 57 at 15).

The Supreme Court found an exception to Eleventh Amendment sovereign immunity in *Ex Parte Young* for claims for prospective injunctive relief against individual state officials in their official capacities. *PHI Air Med., LLC v. Tennessee Dep't of Lab. & Workforce Dev., Bureau of Workers' Comp.*, No. 3:18-CV-0347, 2018 WL 6727111, at *7 (M.D. Tenn. Dec. 21, 2018) (citing *Diaz v. Michigan Dep't of Corrections*, 703 F.3d 956, 964 (6th Cir. 2013)). In order to fall within the *Ex Parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law. *Id.* The exception set forth in *Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations. *Harris v. Tennessee*, No. 3:19-cv-00174, 2020 WL 107101, at *4 (M.D. Tenn. Jan. 9, 2020). "The test for determining whether the *Ex Parte Young* exception

applies is a 'straightforward' one." *Id.* (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008)). The court considers whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Id.*

Because the Court has found that Defendants are not entitled to Eleventh Amendment immunity, the Court need not consider whether the doctrine of *Ex Parte Young* applies in this case. *Anderson v. Clarksville Montgomery Cty. Sch. Sys.*, No. 3:06-0324, 2006 WL 1639438, at *2 (M.D. Tenn. June 13, 2006) ("Thus, given this lack of [Eleventh Amendment] immunity, there is no need to bring official capacity actions against local government officials because local governments, including local school boards, can be sued directly for both damages and injunctive or declaratory relief." (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief.")).[17] In short, Plaintiff's claim for damages, and for injunctive relief, against

---

[17] The Court notes that it believes that Defendants have misread the case law and misstated the requirement for bringing a claim for injunctive relief against a particular state official under *Ex Parte Young*. Defendants rely on a single case, *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1343 (Fed. Cir. 2006), to argue that the individuals in this case are not proper defendants as to such claim, because they only *supervise* mail handling and they do not actually *perform* the infringing activities. However, in *Pennington Seed*, the Federal Circuit explained that the defendants were essentially "random state [university] official[s]," and there was no nexus when defendants' supervisory role was not hands-on but only to oversee university patent policy. *Id.* Therefore, the Court believes that the holding in *Pennington Seed* was much narrower than Defendants suggest, involving a far more attenuated connection between the applicable defendants and the infringing conduct than the connection that is alleged here. The Sixth Circuit has been clear that, under *Ex Parte Young*, the state official sued must just have some connection with the conduct. *See e.g.*, *Floyd v. Cty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012) ("The state official sued, however, must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains."); *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations.") (citing *Floyd*); *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) ("Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in

the individual Defendants in their official capacities (only) are redundant of the claims against Rutherford County and thus will be dismissed.

### C. **Whether claims for enhanced damages should be dismissed**

In the Complaint, Plaintiff requests treble damages pursuant to 35 U.S.C. § 284 (the "Patent Act"). (Doc. No. 1 at 13 (requesting an award of "treble damages pursuant to 35 U.S.C. § 284 in view of Defendants' willful infringement")). In the alternative to arguing that they are entitled to Eleventh Amendment immunity (and thus not liable for any damages), Defendants assert that municipalities and counties are immune from punitive or exemplary damages unless expressly provided by statute. (Doc. No. 57 at 16-17). Plaintiff argues that the Court can assess punitive damages against Defendants. (Doc. No. 68 at 17-19).

The Supreme Court has held that municipalities (and other government entities)[18] are generally not liable for punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). "[T]he Supreme Court based its rationale in *City of Newport* on two factors: 1) the fact that Congress, in enacting Section 1983, did not upset common-law tradition against municipal liability for punitive damages; and 2) public policy concerns mitigated against burdening the taxpayers with the punishment more properly imposed directly on the public officials." *Lewis v. Vill. of*

---

their official capacity. All that is required is that the official be responsible for the challenged action. As the Young court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of.") (discussed in *Floyd*). The Court also notes that Plaintiff clearly alleged that the three Individual Defendants were involved in the infringing conduct, indicating that there was some (relatively unattenuated) connection between the conduct and the officials. (Doc. No. 1 at ¶¶ 5-7, 28).

[18] Plaintiff argues that Defendants have only pointed to cases involving the federal government being immune from punitive damages. However, *City of Newport* itself did not involve the federal government as a party. (Doc. No. 68 at 17).

*Minerva*, 934 F. Supp. 268, 271 (N.D. Ohio 1996) (finding punitive damages under the federal anti-wiretap act inappropriate).

The Patent Act states that "[the] court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d)." 35 U.S.C. § 284. Neither party cites to any case law specifically addressing whether treble damages under the Patent Act can be assessed against a municipality, and the Court is aware of no such authority. There is no indication from the text of the Patent Act that Congress intended to upset the common law tradition of not imposing punitive damages upon municipalities, and the parties have not pointed the Court to any legislative history or other indication of Congress's intent to do so.[19] Thus, the Court will not impose upon the municipality liability for any damages properly considered punitive damages. Therefore, the Court will turn to deciding whether the Patent Act's treble damages are punitive. The Supreme Court has recently explained the treble damages allowed under the Patent Act as follows:

> The pertinent text of § 284 provides simply that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. That language contains no explicit limit or condition, and we have emphasized that the "word 'may' clearly connotes discretion." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136, 126 S. Ct. 704, 163 L.Ed.2d 547 (2005) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533, 114 S. Ct. 1023, 127 L.Ed.2d 455 (1994)). At the same time, "[d]iscretion is not whim." *Martin,* 546 U.S., at 139, 126 S. Ct. 704. "[I]n a system of laws discretion is rarely without limits," even when the statute "does not specify any limits upon the district courts' discretion." *Flight Attendants v. Zipes,* 491 U.S. 754, 758, 109 S. Ct. 2732, 105 L.Ed.2d 639 (1989). "[A] motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Martin,* 546 U.S., at 139, 126 S. Ct. 704 (quoting *United States v. Burr,* 25 F. Cas. 30, 35 (No. 14,692d) (C.C.D.Va.1807) (Marshall, C.J.); alteration omitted). Thus, although there is "no precise rule or formula" for awarding damages under § 284, a district court's "discretion should be exercised in light of the considerations" underlying the grant

---

[19] Defendants do note, as the Court has previously discussed, that the waiver of sovereign immunity in the Patent Act has been found to be an invalid abrogation of sovereign immunity. (Doc. No. 57 at 17 n.1).

of that discretion. *Octane Fitness,* 572 U.S., at ——, 134 S.Ct., at 1756 (quoting *Fogerty,* 510 U.S., at 534, 114 S. Ct. 1023).

Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate. See *supra,* at 1928 – 1930. District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount. But through nearly two centuries of discretionary awards and review by appellate tribunals, "the channel of discretion ha[s] narrowed," Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 772 (1982), so that such damages are generally reserved for egregious cases of culpable behavior.

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931–32 (2016). Therefore, it appears clear that the Supreme Court believes that the treble damages provision of the Patent Act is punitive in nature.[20] As a result, the Court finds that it would be inappropriate to assess treble damages under the Patent Act against Defendants.

---

[20] In one case, the Supreme Court did indicate, in dicta, that treble damages under the False Claims Act could be assessed against a municipality. *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 131–32 (2003); *United States v. Hickman Cty., Tennessee*, 60 F. App'x 569, 570 (6th Cir. 2003) (discussing *Cook County* and noting that "the potential remedy of treble damages does not preclude recovery against a county government"). The Supreme Court in *Cook County* reasoned that 1) the treble damages were not "classic punitive damages" and would be awarded by a judge instead of a jury, and 2) the taxpayers were not "blameless" or "unknowing" because they would "have already enjoyed the indirect benefit of the fraud." *Cook Cty., Ill.*, 538 U.S. at 131-32. The case here is distinguishable in that the Supreme Court has previously clearly held that treble damages in the Patent Act are punitive, and there appears to be no previous benefit to the public through the alleged patent infringement. *Cook County* has also not been followed when courts have analyzed similar statutes with treble damages provisions, such as 18 U.S.C. §1964(c) (RICO's treble damages provision). *See also Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412–13 (5th Cir. 2015) (distinguishing Cook County and finding that municipality could not be subject to treble damages under RICO).

Thus, the Court finds that the Motion will be granted with respect to treble damages against Defendants.[21]

## **CONCLUSION**

For the reasons discussed herein, the Court will deny in part and grant in part Defendants' Motion. The Court will deny the Motion with respect to the claim that these Defendants are entitled to Eleventh Amendment immunity.

The Court will grant the Motion with respect to Plaintiff's request for treble damages under the Patent Act.

The remaining claims against the individual Defendants will be dismissed as redundant of the remaining claims against Rutherford County.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[21] It is appropriate to dismiss these claims against all Defendants, as the Individual Defendants are sued in their official capacities and the other Defendants are government entities. *E.g.*, *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995); *C.P. by & through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1092 (M.D. Fla. 2015); *Bush for Est. of Garland v. Bowling*, No. 19-CV-98-GKF-FHM, 2020 WL 3271928, at *2 (N.D. Okla. June 17, 2020); *Abbott v. Vill. of Winthrop Harbor*, No. 93 C 4642, 1995 WL 51553, at *11 (N.D. Ill. Feb. 4, 1995). Indeed, for the same reason, as discussed herein the Court will dismiss all claims against the Individual Defendants as redundant.