IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HLFIP HOLDING, INC. d/b/a SMART COMMUNICATIONS IP HOLDINGS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RUTHERFORD COUNTY, TENNESSEE; MICHAEL FITZHUGH, *in his official capacity as Rutherford County Sheriff*; KEITH D. LOWERY, *in his official capacity as Deputy Chief of Rutherford County Sheriff's Office*; RUTHERFORD COUNTY ADULT DETENTION CENTER; and CHRISTOPHER FLY, *in his official capacity as Deputy Chief of Rutherford County Adult Detention Center*, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants and Counterclaimants, | ) ) ) |
| VENDEGINE, INC., | ) ) |
| Intervenor. | ) ) |

NO. 3:19-cv-00714

JUDGE RICHARDSON

## **MEMORANDUM OPINION**

Pending before the Court is Defendants Rutherford County et. al.'s and Intervenor VendEngine, Inc.'s Motion for Judgment on the Pleadings (Doc. No. 86, "Motion"), filed along with a supporting memorandum of law (Doc. No. 87). Plaintiff filed a response. (Doc. No. 94). The movants filed a reply. (Doc. No. 105). This motion is ripe for review.

For the reasons discussed herein, the Court will grant Defendants and Intervenor's motion.

<u>BACKGROUND</u>

A. <u>Factual Background</u>[1]

Plaintiff, HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings ("Smart Communications"), is a Florida corporation. (Doc. No. 1 at ¶ 2). Defendant Rutherford County is a municipal governmental entity organized under Tennessee law. (*Id.* at ¶ 3). Defendant Michael Fitzhugh is the Sheriff of Rutherford County, and Defendant Keith D. Lowery is the Deputy Chief of the Rutherford County Sheriff's Office. Defendant Rutherford County Adult Detention Center ("RCADC") is an adult correctional facility operated by Rutherford County, and Defendant Christopher Fly is the Deputy Chief of the RCADC. (*Id.* at ¶ 2).

Smart Communications is the owner of the patent-in-suit, namely U.S. Patent 10,291,617 ("'617 patent"), entitled "Correctional Postal Mail Contraband Elimination System" and issued May 14, 2019. (*Id.* at ¶¶ 11–12). The patent is for a kiosk-based electronic system and method[2] for correctional facilities intended to improve the detection of contraband in inmates' mail. (Doc. No. 1-2 at 22). The patented system is meant to be more efficient than manual processing of inmate mail. (Doc. No. 1-2 at 23). The exemplary claim 1 describes "identifying mail information," creating an electronic copy of inmate mail, "screening said postal mail for contraband," "associating a contraband flag with said electronic copy," and "determining access to said electronic copy by said recipient inmate wherein access may be granted or denied based upon whether contraband was discovered in said postal mail." (Doc. No. 1-2 at 27). In essence, the

---

[1] The Court takes these background facts from the Complaint and, as indicated below, accepts them as true for purposes of the Motion.

[2] For the sake of brevity, the Court will use the term "system" or "process," rather than "system and method," to describe the kind of invention the '617 patent covers.

patent describes using a kiosk to scan mail and filter out contraband. Smart Communications uses this patent in its product MailGuard®. (Doc. No. 1 at ¶ 15).

In 2017, RCADC expressed interest in MailGuard® and instructed its commissary vendor, VendEngine, Inc. ("VendEngine") to partner and work with Smart Communications to bring MailGuard® to RCADC. (Doc. No. 1 at ¶ 20). After some preliminary discussions, VendEngine and RCADC abruptly ceased discussions with Smart Communications. (*Id.* at ¶ 21).

In June 2018, RCADC implemented a new application by VendEngine that essentially was Smart Communications' MailGuard®. (*Id.* at ¶ 23). VendEngine's application enables, among other functions, scanning inmate mail, detecting contraband or other inappropriate content, and withholding mail depending on its content. (*Id.* at ¶ 25). RCADC continues to use VendEngine's application. (*Id.* at ¶ 24).

B. <u>Procedural Posture</u>

On August 15, 2019, Smart Communications instituted this action by filing a complaint (Doc. No. 1) against Defendants. In their answer to the complaint, Defendants raised invalidity of the '617 patent under 35 U.S.C. § 101 ("§ 101") as an affirmative defense. (Doc. No. 22 at 9), and also asserted a counterclaim for declaratory judgment of non-infringement of the '617 patent (Doc. No. 22 at 14). Thereafter, VendEngine moved to intervene in the action. (Doc. No. 24). After its motion was granted, (Doc. No. 35), VendEngine filed an answer, wherein it likewise raised invalidity as an affirmative defense and counterclaimed for a declaratory judgment of non-infringement of the '617 patent. (Doc. No. 36 at 9, 14–15). Smart Communications then answered VendEngine's answer and asserted a counterclaim against VendEngine for infringement of the '617 patent. (Doc. No. 54).

On March 30, 2020, Intervenor and Defendants filed the instant Motion, seeking judgment on the pleadings pursuant to Rule 12(c) on the grounds that the '617 patent is invalid under § 101. (Doc. No. 86). Thereafter, Defendants and VendEngine each filed an amended answer and counterclaim, each of which reiterated the affirmative defense of invalidity under § 101 and the counterclaim for a declaratory judgment, (Doc No. 262 at 9, 24–25; Doc. No. 268 at 9, 24–25), and neither of which made any amendments material to the resolution of the instant Motion.

<u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012). "For purposes of a motion for judgment on the pleadings, all well-pleaded allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Id. at 581–82. "A Rule 12(c) motion is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Stafford v. Jewelers Mut. Ins. Co.,* 554 F. App'x 360, 370 (6th Cir. 2014) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).

In this case, a party moving under Rule 12(c) for judgment on the pleadings because of invalidity under § 101 must show that subject-matter ineligibility is clear and convincing based on

pled facts. *Ronald A. Katz Tech. Licensing, L.P. v. Fedex Corp.,* No. 2:15-cv-02329, 2016 WL 1179218, at *3 (W.D. Tenn. Mar. 24, 2016). Claims must be construed in favor of nonmovant. *See Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (stating that claims must be construed in favor of nonmovant in the context of a 12(b)(6) motion).[3]

DISCUSSION

A.  Invalidity Under 35 U.S.C. § 101

§ 101 prescribes the subject matter eligible for patent protection. Specifically, it provides that "[w]hoever invents or discovers *any new and useful process . . . or any new and useful improvement thereof*, may obtain a patent . . . ." 35 U.S.C. § 101 (emphasis added).

Under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014), a patent is invalid under § 101 if (1) the claims, individually and in combination, are directed to an abstract idea or natural phenomena *and* (2) there is not an "inventive concept" that can transform the abstract idea. *Id. Alice* thus essentially prescribes two requirements (sometimes referred to in terms of "steps") for patent invalidity. As set forth below, because the '617 patent meets both requirements for invalidity, it is invalid under § 101.

---

[3] Contrary to Plaintiff's assertion, the fact that claim construction has not occurred does not preclude a clear and convincing showing that the patent is invalid. (Doc. No. 94. at 6-7). "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction and Trans. v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Claim language itself, even if construed in favor of the non-movant, can be sufficiently clear and convincing to rebut the presumption that the United States Patent and Trademark Office ("PTO") issued a valid patent. To hold otherwise would be to suggest that no motion to dismiss (including a motion based on invalidity and noninfringement) that hinges on claim language can be granted without full claim construction—a suggestion that is unsupported by case law. *See, e.g., Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2016) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.").

B.  Application of *Alice*'s two requirements for invalidity under § 101

*1.  Alice* Step One

Under Federal Circuit precedent, a patented process that merely uses a computer to perform certain functions is directed to an abstract idea for purposes of *Alice* step one when it does not improve computer functionality at all. "[A] relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea'" *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 612 (Fed. Cir. 2016) (quoting *Enfish, LLC v. Microsoft Corp.,* 822 F.3d. 1327, 1335 (Fed. Cir. 2016)). Step one "relie[s] on the distinction made in *Alice* between, on one hand, computer-functionality improvements and, on the other, uses of existing computers as tools in aid of processes focused on 'abstract ideas'" *Electric Power Group, LLC v. Alstom S.A.* 830 F.3d 1350, 1354 (Fed. Cir. 2016).

The process covered by '617 patent falls into the latter category. The patent covers a process that does not improve any "*existing technological* process," as would be sufficient under *Alice*, 573 U.S. at 223, to support patentability. Instead, the patented process is one of manually sorting postal mail and detecting contraband via a computer. It merely improves the process of mail distribution compared to a manual method. No step "purport[s] to improve the functioning of the computer itself…or effect an improvement in any other technology[.]" *Alice*, 573 U.S. at 225. Manually sorting postal mail is not properly considered an existing *technological* process. None of the claims improve the functioning of computers or any technology itself. Therefore, the '617 patent recites an abstract idea within the meaning of *Alice* step one.

*2.  Alice* Step Two

Even if it is directed to an abstract idea, a patent can meet the requirements of § 101 if it describes an "inventive concept." *Alice*, 573 U.S. at 217–218. But if a patent neither "require[s]

an arguably inventive set of components or methods" nor requires "a new source or type of information, or new techniques for analyzing it," it does not describe an inventive concept as described by *Alice*. *Electric Power Group*, 830 F.3d at 1355.

"If a patent uses generic computer components to implement an invention, it fails to recite an inventive concept under *Alice* step two." *West View Research, LLC v. Audi AG*, 685 Fed. App'x 923, 926 (Fed. Cir. 2017). Plaintiff does not allege usage of even a single non-generic computer component. According to the '617 patent's detailed description of embodiments, the process uses generic scanners, kiosks, and computers. (Doc. No. 1-2 at 24). For example, the '617 patent describes institution staff using terminals to view inmate mail. *Id.* at 27. "Such terminals may be computers, laptops, dumb terminals, virtual machines, kiosks or any other electronic device with a display and the ability to connect to server through a network." *Id.* Inmates may view their mail using "portable tablets, music players, smart phones, or other portable devices used by inmates and capable of communicating with server through a network connection." *Id.* The claims cover only generic methods such as identifying keys and flags. Plaintiff does not allege that anything "in the claims . . . requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Electric Power Group,* 830 F.3d at 1355.

Plaintiff also does not allege that there are new techniques used. Scanning mail is not a new technique. Neither is flagging mail that has certain attributes or flagging mail (based on content) to prevent its ultimate distribution to the addressee. Flagging or blocking mail based on content is a basic function of email spam filters, for example. The claims are "essentially result-focused, functional," rather than describing a nonroutine method. *Id.* at 1356. The only novelty presented by the '617 patent is the application of these routine steps in the specific context of

inmate mail. That is distinguishable from, for example, the new technique found patentable in *Bascom*, which was the "installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Bascom*, 827 F.3d at 1350. The patented process at issue in *Bascom* went far beyond merely using basic computer functions to replace a manual process.

Even if, as Plaintiff claims, the '617 patent solves a problem or improves a process in the corrections industry, that alone is not sufficient to meet § 101's requirements. Instead, § 101 requires the patent to cover matter that is both "*new* and useful," not just useful. Plaintiff cites *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300–1301 (Fed. Cir. 2016), for the proposition that an arrangement of conventional elements does not satisfy *Alice*'s second requirement for invalidity (*i.e.*, step two) if it provides a solution to a recognized problem. (Doc. No. 94 at 13). But *Amdocs* does not actually support that proposition. Rather, *Amdocs* states that the invention must "solve a technology-based problem." *Amdocs*, 841 F.3d at 1300. Again, the invention covered by the '617 patent does not solve a technology-based problem, but rather uses technology to increase efficiency compared to manual processes.

Plaintiff notes that the '617 patent "present[s] no danger of broadly pre-empting the distribution of mail to inmates at correctional facilities." (Doc. No. 94 at 14). Assuming arguendo this is the case, the fact that the claims do not preempt all methods of distribution of mail to inmates does not make the patented system an invention or discovery of a "new" process under § 101 when it otherwise is not.[4] *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir.

---

[4] Plaintiff points out that the analysis under § 101 is distinct from an analysis of novelty and obviousness under 35 U.S.C. § 102 and 35 U.S.C. § 103. (Doc. No. 94 at 14). That said, § 101 nevertheless authorizes the issuance of a patent only for an "invent[ion]" or a "discover[y]" of something "new," such as a "new . . . process" or "new . . . improvement thereof." 35 U.S.C. § 101; *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 304 F.3d 1221, 1227 (Fed. Cir. 2002.) ("To be patented an invention must be new."

2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

Plaintiff cites *Bascom* for the idea that narrowed claims can save a patent under § 101. (Doc. No. 94 at 14). But the Federal Circuit notes in *Bascom* itself that "[its prior] decisions further explained that simply because some of the claims narrowed the scope of protection through additional 'conventional' steps for performing the abstract idea, they did not make those claims any less abstract." *Bascom*, 827 F.3d at 1352. The court in *Bascom* held that the patent-in-suit failed to satisfy *Alice*'s step-two requirement for invalidity because the claims contained an innovative step, not because the claims were narrowed and did not preempt the entire abstract idea. *Bascom*, 827 F.3d at 1350.

Thus, the '617 patent is invalid because it is not directed to patent-eligible subject matter under § 101.

<u>CONCLUSION</u>

For the reasons discussed herein, the Court will grant the Motion and dismiss with prejudice Plaintiff's claims (both as presented against Defendants in the Complaint (Doc. No. 1) and in the counterclaim against VendEngine (Doc. No. 54) with prejudice. And, for reasons to be set forth in the order that will accompany this memorandum opinion, the Court *sua sponte* will dismiss without prejudice Defendants' and VendEngine's respective counterclaims for declaratory judgment of non-infringement (Doc. No. 262 at 14–15; Doc. No. 268 at 14–15).

---

(citing 35 U.S.C. §§ 101, 102(a), (e))), *reh'g en banc granted, opinion vacated on other grounds*, 314 F.3d 1299 (Fed. Cir. 2002), *and on reh'g en banc*, 346 F.3d 1051 (Fed. Cir. 2003). In turn, § 102 and § 103 ask, respectively, whether the invention or discovery is, in addition to being "new," also novel and nonobvious. Notably, the text of § 102 does not use the term "novel" or "novelty"; rather, the term "novelty" is used in the caption of § 102 as a shorthand reference to the particular requirements for patentability set forth in the text, which go beyond merely requiring that the invention be "new." Some of the characteristics that make an invention "new," however, could be relevant to whether the invention is novel in the sense required by § 102 and to whether the invention is nonobvious as required by § 103.

An appropriate accompanying order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE